# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| SHEDDRICK C. KINNIEBREW, | Case No. CV 07-6935 (SH) |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the Decision by the Commissioner of Social Security denying plaintiff's application for Disability Insurance Benefits under Sections 216(i) and 223 of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and the parties have filed a joint stipulation. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

On August 27, 2003, plaintiff Sheddrick Kinniebrew filed an application for

Disability Insurance Benefits, alleging an inability to work since August 25, 2000 due to spondylosis and arthritis pain in the neck, shoulders, elbows, hands, knees and other joints. (Administrative Record ["AR"] 66-69). On December 3, 2004 (hereinafter referred to as the "2004 Decision"), an Administrative Law Judge ("ALJ") determined that plaintiff was not disabled within the meaning of the Social Security Act. (AR 14-22).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (AR 5-9), plaintiff filed an action in this Court. On August 7, 2006, the Court remanded the matter for consideration of the weight given to Dr. Marshall's June 3, 2005 report regarding plaintiff's fibromyalgia condition. (AR 624-27) The Appeals Council subsequently remanded the case to an ALJ. (AR 622-23). On July 26, 2007 (on remand), another ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. (AR 606-16).

Plaintiff makes two challenges to the ALJ's 2007 Decision denying benefits (hereinafter referred to as the "2007 Decision"). Plaintiff alleges that the ALJ erred (1) in failing to articulate specific and legitimate reasons for rejecting the opinions of plaintiff's treating physician, Dr. G. Valle; and (2) failing to articulate specific and legitimate reasons for rejecting the opinion of Dr. William Marshall.

Each of plaintiff's contentions will be addressed in turn.

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Dr. G. Valle, plaintiff's treating physician. In response, defendant argues that the ALJ provided specific and legitimate reasons for rejecting the opinion evidence of Dr. Valle.

In a questionnaire dated December 16, 2003,[1] Dr. Valle (of Southern California Kaiser Permanente), who had treated plaintiff for diabetes since August 13, 1994, stated that plaintiff could do the following: sit only 3 hours per workday; stand/walk only 2 hours per workday; occasionally lift up to 20 pounds, but never lift over 20 pounds; and occasionally carry up to 10 pounds. Dr. Valle further stated that plaintiff would be absent from work more than three times a month.[2] (See AR 259-64).

Nonetheless, in the 2007 Decision, the ALJ, who found that plaintiff had two severe impairments -- degenerative disc disease of the cervical spine and a history of arthralgias -- determined that, prior to December 31, 2002, plaintiff had the residual functional capacity to lift 50 pounds occasionally, lift and carry 25 pounds frequently, and walk and stand 6 hours per workday. (See AR 611, 614-15).

Contrary to plaintiff's assertion, the ALJ did provide specific and legitimate reasons in the 2007 Decision for rejecting the opinion evidence of Dr. Valle. See Morgan v. Apfel, 169 F.3d 595, 596 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Magallanes v. Bowen, 881 F.2d 747, 751 (1989).

In the 2004 Decision (which the ALJ in the 2007 Decision clearly reviewed and considered, AR 609)[3], the ALJ noted that plaintiff's diabetic neuropathy was not diagnosed until March 2003 (AR 21, 116-20), and that there was no effective date for Dr. Valle's assessment that plaintiff's pain was related to his diabetes (AR 21, 259-64). Since the medical progress notes only indicated limitations due to neuropathy after

---

[1]  The record contains only a portion of the questionnaire.

[2]  At the administrative hearing (on remand), a vocational expert testified that an individual with that rate of absenteeism would not be able to perform any work. (AR 681)

[3]  Although plaintiff contends that, based on the Court's remand order, the defendant cannot rely on the 2004 Decision with respect to its evaluation of Dr. Valle's opinions (see Joint Stipulation at 11-12), there was no indication or suggestion in the Court's remand order or in the Appeals Council's order vacating the prior decision and remanding the case that the ALJ on remand should re-evaluate Dr. Valle's opinions (see AR 622-23, 625-27).

March 2003 (see AR 111-212), the ALJ accepted December 16, 2003 (the date of Dr. Valle's assessment of plaintiff) as the effective date of plaintiff's limitations due to neuropathy. (AR 21). Because Dr. Valle's assessment of plaintiff took place after December 31, 2002, the date last insured, the ALJ gave little weight to Dr. Valle's opinions. (Id.). Thus, the ALJ's 2007 Decision to reject Dr. Valle's opinions was properly based on the lack of evidence to establish that plaintiff suffered from diabetic neuropathy prior to December 31, 2002. See Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)("[A claimant] must prove that she was . . . subject to a condition which became so severe as to disable her prior to the date upon which her disability insured status expires.").

The ALJ also rejected Dr. Valle's opinions, in part, because they were rebutted by the opinions of the consultative medical examiner Dr. Ursula Taylor. (AR 20, 246-52). See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(the opinions of examining physicians can be specific and legitimate reasons to reject the opinions of treating physicians). Dr. Valle found that plaintiff had pain and numbness in his lower legs, neck and shoulders, and had muscle weakness in his lower legs. (AR 264).

Although Dr. Taylor noted that plaintiff had decreased sensations of the toes and a decreased range of motion in the shoulders, Dr. Taylor found that plaintiff had normal muscle strength and a normal gait. (AR 249-50). Based on her clinical findings, Dr. Taylor concluded that plaintiff did not have any lifting, carrying, standing, walking or sitting limitations. (AR 250). Dr. Taylor's opinions constituted substantial evidence supporting the ALJ's findings. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)("[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'"); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the

record."); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1991)("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").

**ISSUE NO. 2:**

Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Dr. William Marshall, another treating physician. In response, defendant argues that the ALJ provided specific and legitimate reasons for rejecting the opinion evidence of Dr. Marshall.

In a questionnaire dated June 30, 2005, Dr. Marshall (of the Veterans Administration Medical Center), who had treated plaintiff on a monthly basis since March 2004, diagnosed plaintiff with fibromyalgia, neuropathy diabetes, hypertension, and allergic rhinitis. Dr. Marshall stated that plaintiff could do the following: sit only 1 hour per workday; stand/walk only 1 hour per workday; occasionally lift up to 10 pounds, but never lift over 10 pounds; and occasionally carry up to 10 pounds, but never carry over ten pounds. Dr. Marshall further stated that plaintiff would be absent from work more than three times a month. (See AR 525-32).

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). Common symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. See Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003); Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)("[T]he only symptom that discriminates

between [fibromyalgia] and other diseases of rheumatic character [is] multiple tender spots ["or trigger points"], more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch."). The cause of fibromyalgia is unknown, there is no cure, and it is poorly understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis. Benecke v. Barnhart, supra, 379 F.3d at 590.

After summarizing the medical evidence concerning plaintiff's symptoms prior to December 31, 2002, the ALJ proceeded to address Dr. Marshall's June 2005 report. The ALJ initially noted that, although Dr. Marshall believed that plaintiff could not do even sedentary work, and that plaintiff's symptoms and limitations had been in effect "for several years," Dr. Marshall did not begin to treat plaintiff until "well after his date last insured." (AR 612; see AR 531).

As plaintiff points out, Dr. Marshall's evaluation even after the expiration of plaintiff's insured status was relevant to an evaluation of fibromyalgia. See Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988). Nonetheless, the fact that Dr. Marshall did not treat plaintiff prior to his date last insured was a relevant consideration as to the weight given to Dr. Marshall's diagnosis and opinions. See Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)("The rationale for giving greater weight to a treating physician's opinion is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual").

Moreover, in rejecting Dr. Marshall's opinions, the ALJ relied on evaluations by two of plaintiff's other Southern California Kaiser Permanente treating physicians -- Dr. Randall Parker's July 15, 2001 report (see AR 142-43) and Dr. Patricia Harrison's July

25, 2001 report (see AR 153-54). Both reports were prepared prior to plaintiff's date last insured (December 31, 2002). The ALJ found that the evidence did not support Dr. Marshall's diagnosis:

> "Dr. Harrison's report clearly stated that the work-up regarding the [plaintiff's] "polyarthralgia" had been negative and that Dr. Parker's report also emphasized that there were no objective findings. Additionally, Dr. Parker emphasized that although the [plaintiff] alleged having tenderness in the shoulder girdles, muscle bellies and calf, there was no discomfort in these areas when they were compressed firmly. It is not clear upon what basis Dr. Marshall based his belief that the claimant had been limited to less than sedentary work by fibromyalgia for "several years," as he cited no medical evidence or objective findings. . . . Dr. Marshall's report, which consists of brief handwritten responses on a pre-printed form bearing the name of the [plaintiff's] former legal representative, is unconvincing and unsupported." (AR 612-13).

The ALJ then noted that Dr. Murata (also of Southern California Kaiser Permanente) in August 2002 (prior to plaintiff's date last insured) stated that plaintiff had pain in his neck, shoulders, elbows, hands and knees, that plaintiff had arthralgias, and that a MRI showed two bulges and one disc protrusion in the cervical spine. However, Dr. Murata did not state that plaintiff had any physical restrictions. (AR 613; see AR 128). The ALJ further noted that none of plaintiff's treating physicians at Southern California Kaiser Permanente during the relevant time period (whose records were summarized by the ALJ, see AR 612) made any diagnosis of fibromyalgia from plaintiff's "vague and intermittent symptoms." (AR 613; see AR 123-212, 235-44, ). The ALJ further noted that Dr. Marshall's findings that plaintiff was limited to less than sedentary work was inconsistent with plaintiff's own statements in a September 2003

questionnaire that in September 2003 he was walking 1 to 2 miles, 2 to 3 times a week; shopping for groceries twice a week, performing general housecleaning and yard work, and occasionally repairing a chair or other small item. (AR 614; see AR 91-98).

Since Dr. Marshall's opinions were not supported by medical findings or test results, and since the reports of Drs. Parker and Harrision did not support Dr. Marshall's opinions, the ALJ did not err in rejecting Dr. Marshall's opinions. See 20 C.F.R. § 416.927(b)-(d) (The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Burkhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988) (stating that a treating physician's medical opinion unsupported by described medical findings, personal observations, or test results may be rejected).

## ORDER

For the foregoing reasons, the decision of the Commissioner is affirmed.

DATED: 4/7, 09

STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE